All right, I'll call the next case, it's Help First and Others v. Capitol Specialty Insurance Corp. Good morning. Good morning, Your Honor. My name is Ted Craig. I'm with the firm of Gray Robinson from Florida. With me is Deputy General Counsel for Health First, Anthony Conte. It's a pleasure to be here. May it please the Court. The district court committed a fundamental error in entering summary judgment in this insurance coverage dispute because the court treated the claims asserted by Health First as claims to assert a duty to defend rather than claims for identification. There's no question that the claims brought by Health First against the insurance companies were in the nature of claims for identification, not to enforce a duty to defend. Health First never sought to enforce any duty to defend at any time. Moreover, none of the policies even implicated contained a duty to defend, yet the district court, at the invitation of the insurers, relied solely on the underlying pleadings in all of the claims brought against Health First as the basis for his ruling. What do you say the court should have looked at? What, in addition to the complaints, do you think the court should have looked at? Well, the court should have looked at all of the evidence relating to the nature of the claims, including the timing, the parties involved, and what the claims were really about. Instead, the court looked solely at the superficial allegations alleging, as the court put it, anti-competitive and monopolistic behavior. Had the court looked at what you wanted it to look at, what would that have revealed that would help your case? Well, two points on that, Your Honor. First, it's our position that the court committed fundamental error by expressly stating it would not consider any extrinsic evidence. All right, but I'm just real curious what it would be if he had said that. Oh, well, in the cases that you read, in this type of insurance dispute, you would look at the actors involved and the underlying wrongdoing. All that's abstract. In your case, if he had looked at whatever you asked him to look at, first, what did you ask him to look at? Second, if he had looked at that, what would the district court judge have found that would have helped your argument these claims weren't related? That's my question. Yeah. Health First argued that there should be a more fully developed record and that summary judgment was premature based solely on the allegations of the complaints. And the court rejected the argument that summary judgment was premature and that more discovery should take place, instead expressly finding that the court didn't need to look at any evidence. This is unequivocal in judgment. I'd like to quote from the court's order as to plaintiff's. This is from page 21 of the summary judgment order. As to plaintiff's argument that it would be improper for the court to rely upon the underlying complaints in determining whether the claims are related, the court disagrees. Courts do not require a showing of the actual facts to determine whether multiple claims are related. The court continued. Furthermore, plaintiff's argument that it would be improper to solely look to the allegations in the complaints because plaintiffs are seeking indemnity rather than a declaration that defendants owe a duty to defend, which unlike the duty to indemnify is determined by relying solely upon the allegations underlying complaints, misses the mark. I'm just curious. So it seems to me that even if you flesh out the facts a little bit, the court's going to be looking at the same time. Clearly, these are subsequent transactions. So we know the timing's not right. Clearly, they're different parties. That's part of your argument. So we know that's not right. And I'm just not certain what it is in addition you were going to show that would make this not related, what the facts would have been. Did you proffer anything to the court? So just judge me. The proffer we would make is that we would take depositions of the parties who made the claims. And we would have our own people testify as to what the nature of the wrongdoing was. We know. Did you provide the court with any affidavits in support? Yes, there was evidence supplied in opposition, but the position. Of the underlying facts of these complaints? Yes, I believe there were affidavits submitted with regard to some of the claims and also underlying documents. But our position, our position on appeal is that the court did not even allow a consideration of that evidence. I know the insurers want to argue that Health First failed to meet its burden to create a material issue of fact. But this order fails under Rule 56 for the most basic reason that the court never even talked about whether there were disputed issues of material fact, never made a finding that there were no disputed issues of material fact. That's nowhere in this order. The court said, I will not consider any extrinsic evidence other than the facial allegations of the claims. We believe that's fundamental error. Well, but I mean, their argument is, you know, you can complain about the court not looking at evidence, but you've got to give them some evidence to look at. And, you know, just you say you believe there were some affidavits about the underlying facts to these complaints? Yes, there was some record evidence supplied, but the position, and it's in the record, I'm sorry we gave you such a big index over there, but it's in the record that Health First argued that it needed to develop the record more thoroughly before summary judgment could be entered. And the court rejected that argument and said, I don't need to look at any evidence. I don't need to look at what actually these underlying claims are about. I don't need to look at deposition testimony, et cetera. I can rely solely on the allegations of the underlying complaints. And that was the crux of the district court's holding over the objection. And one more point I'd like to make. The insurers asserted an affirmative defense that the claims were not covered because of this related claims provision. I would argue it was the insurer's duty of production to demonstrate that factually the claims were related, but they didn't do that either. They argued to the district court that the court need only rely on the underlying allegations in those complaints. So if we're going to argue about burdens of proof and whether we created a material issue of facts, let's keep in mind that the insurers asserted an affirmative defense pursuant to this related claims provision. We would argue that if under some type of tipsy coachman argument, that's a Florida term, you were to try to preserve this summary judgment order by finding that there is record evidence, they didn't meet their burden. They did not prove that the claims were in fact related. Their argument was that the underlying complaints are the basis for the court's ruling, and that is all the court needs to consider. I guess I'm a little... Did Heldt first point out to the district court cases like Hagen and Hayden, you know, where the law does seem to be that, yes, if it's for, you know, you're supposed to look at the underlying facts, not just at the complaint if you're going into... Yes, that was included in the opposition to the summary judgment motions. And how did the district court deal with those cases? The court just ignored them as far as I can tell. The court cited to a litany of cases that were a mixed bag of duty to defend cases and duty to indemnify cases. Some of them were miscited, I would argue, but the court didn't really draw a distinction between the two. I'm not sure what the court's reasoning was in rejecting those, but Florida law is quite clear on this. A duty to indemnify is determined by the underlying facts, the actual facts relating to the claims. I find it curious that the insurers would be arguing here that we should conflate these two tests. I mean, this seems to undermine what the insurance companies do, is they defend under a reservation of rights. They get their second bite of the apple on the actual facts underlying the claims. If the court were to accept the district court's reasoning, we would do away with the duty to indemnify test in Florida, and coverage itself would be determined by the allegations of the underlying complaints. I can't believe that's what the insurers want this court to do today. If the basic facts seem to be the same, I don't know if details are different in all of these, is that your clients were engaged, the allegations when they were sued, in a scheme to leverage their monopoly to coerce physicians and health insurers and HMOs and exclusivity agreements. Parties, different names, different times, but aren't those the same? Well, over 15 years, so between the first... So as a legal matter, maybe the subsequent timing might be a good legal argument in terms of the facts. It's just change the names, change the dates. Aren't the facts the same in all of these? Well, the alleged facts are to that extent, which if you look at these complaints, Your Honor, they're copy and paste jobs of one another. And that's what you want to be indemnified against, copy and paste job complaints with facts that seem to be identical except for names and the dates. No, no, no. We would, if there were a duty to defend, an insurer would certainly want to be defended. But we didn't seek a duty to defend, nor did we enforce a duty to defend. These are all identification claims for settlement payments and defense costs. So the way the system works in Florida is a lawsuit is filed and the allegations are colored with certain things that might fall within the coverage, and insurers in Florida have to defend. But they get to reserve an identification as to whether they're ultimately responsible for losses. What they're arguing here is the reverse. They're saying that if a complaint alleges anything that sounds similar to a prior complaint with regard to a related claims provision, that there is no coverage. And we know that's not how the system works. The system works whereby there is a second look. And if you look at some of the cases we've cited, for example, the KB Holmes case, if we accept the idea that a type of behavior means it's a related claim, then we're throwing the baby out with the bathwater. Because that would mean any negligent supervision claim over a 20-year period could be a related claim. Any claim for any type of unlawful employment practices over a 20-year period could be a related claim. Given that argument, then, are you conceding that all of these claims are the same, that they rise and fall together? Or are you arguing that some, for example, you have a stronger argument against relatedness as to regard to the irony or the— Judge Carnes, I would argue even on the face of these complaints, you can see that there are different operative facts at play, especially with respect to different plaintiffs who were unaffiliated— It would be nice if you would help us with that kind of information. That's what we need to know, if there's something different on the merits. Well, I believe we did so in our brief. If we are going to look solely at the facial allegations of the complaint, which I believe is an error, and we're going to look at these complaints, there are differences in them. And I would point the Court to the KB Holmes case as an example of where the Court did that, and the Koppelwitz case. I'm talking about your case. What about them are different? That is my— Oh, sure, Your Honor. With regard to, well, Wusthof I related to a claim— I'm talking about the ones, the later ones. What would you say is your strongest of these subsequent that it's not related? Yes. Just to set the table, remember, all of them have to relate back to Wusthof I and II, not to each other after Wusthof I and II. Right, right. So, we can start in reverse order. We can start with the Omni lawsuit, which was filed 15 years after Wusthof I and II. The plaintiffs were completely unaffiliated with Wusthof, had nothing to do with Wusthof and his hospitals and competing with their hospitals, and in that case, the allegations were that a group, Omni Healthcare, Interventional Spine Institute of Florida, and a number of individual medical providers were excluded from the Health First insurance network, and they had their hospital privileges revoked, and they did not receive referrals from physician groups affiliated with Health First. However, if you look at the first Wusthof case, it was about anti-competitive, alleged anti-competitive conduct designed to Rockledge Hospital. That's what that case was about, and the point is... You can see that the three Wusthof cases are related, don't you? Wusthof I, II, and III? Yes. Well, they're only related in that they had the same plaintiffs, but the anti-competitive behavior alleged in Wusthof III and IV relates to a different hospital. The hospital they complained about... I mean, in your summary judgment motion, you said they raised essentially the same claims. Well, the same types of claims, but I would not concede that they are in fact related, as that term is used in the policy, because the hospital at issue, and if we did develop the record on this, that's what we'd like to do if we get reversed and go back down, the hospital in the Wusthof III case was not even constructed yet. It was not even in existence yet, and that the crux of that case was that there was competition that would injure that new hospital. Let me ask you about the way you characterize these provisions. I noticed... So there's six of these policies that we're talking about, and five of them, the related claims provision uses the language, quote, whether related logically, causally, or in any other way, and whenever you quote from these provisions in your brief, you leave that clause out. Did you do that on purpose? It seems important to me. There's no guile in that, Your Honor. I mean, but it's kind of important. Well, I think what's important here is this is not a litigation exclusion provision, and that's how the district court characterized it. Well, yeah. I mean, I think whether it's an exclusion or a coverage... No, no. I'm just talking about the nature of the clause. If you look at, for example, the case we've been talking about, the KB Holmes case and other cases, there's a litigation, prior litigation exclusion, and that is different language. In the Acosta case, which the insurers... I'm just talking about the language that we're called upon to interpret here, and that seems pretty important to me, just so you know, and I didn't see it in your brief, just so you know. Logically connected factually, and our position is that their allegations... Well, I guess, Your Honor, if the court were to construe it to mean any prior allegations of wrongdoing in any prior complaint, that language certainly isn't in that provision, unlike a prior litigation exclusion, where that is expressly included. In the Acosta case, which the insurers, as I said, they lean on heavily, it was a prior litigation exclusion. You can see the difference in that type of language. That is where there's any prior pleading or lawsuit brought that alleges anything similar to the subsequent lawsuit. That's not the type of provision we're dealing with. In the Southern District, in the KB Holmes case, which I implore the court to look at, really drew that distinction, and I know I've used a lot of time here, but in the KB Holmes case, they drew a distinction between four different plaintiffs who are all suing for unlawful employment practices with regard to the same facility and the same managers, and the court drew a distinction based on record evidence, deposition testimony, affidavits, etc., drew a distinction with the fourth claimant because she was not working at the time of the original claimant when the first claim was made, and she was not at a particular event where there was purported unlawful conduct. Mr. Craig, you've reserved five minutes for your rebuttal, and we'll give that to you. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. May it please the court, my name is Kate Stetson. I represent the executive risk appellees, and I'm going to be speaking for 10 minutes, Mr. Constine for five minutes. Mr. Craig's argument, I think, has four fundamental problems. One of them is controlling precedent. One of them is the lack of evidence that you pointed out. One of them is a significant forfeiture issue. And the last is the provision itself. So just to take it from the top, the Acosta case that we mentioned in our briefing, it goes unmentioned in the opening brief. Half of the reply is spent on trying to distinguish or diminish it, but the fact is it is an intermediate appellate court case from the State of Florida that is not only controlling on this court, but that has been cited approvingly by this court already in the Zucker case that we also cite. The Acosta, the named party, contended in that case that, quote, because the duty to indemnify, not the duty to defend, is at issue, it was improper for the trial court to enter summary judgment without considering whether the evidence Acosta could provide could create a genuine issue of fact. That's at Joint Appendment. That's at page 574 of the case. 576 of the case, whether extrinsic evidence should be considered to determine the application of the exclusions, in that case it was exclusion, in this case it's a covers provision, as Mr. Craig pointed out, is a matter to be decided on a case-by-case basis according to the general summary judgment standard, whether resolution of the legal issue creates a genuine issue of material fact. And that leads me to the second point. You, Judge Carnes, I think, asked Mr. Craig three times, if the court had looked at the outside evidence, what would it have found? Judge Martin, you said, did you proffer anything? And Mr. Craig's answer was, the proffer we would make is essentially all of the evidence below. They made no proffer. They have made no statement in their brief. He said he thought there was an affidavit, or there were some affidavits or something. There may well have been. I think the issue that Health First confronts here is that they did not make a single argument in their brief about what those facts were that should have been looked at but were not. And if he's here challenging a summary judgment against him, it was his obligation not only below, and by the way, he made no 56 motion for discovery, for a reason I'll get to in a moment, but he made no allegation here or contention here that there was a single fact outside of the complaints that the district court should have looked at but did not. And that's difficult to understand if there were such facts because all of these cases, of course, were available to Health First. Health First was a defendant in all of them and Woodstock 4 and Hines were settled before this case even began. So it wasn't as if there was still factual issues developing during the course of the litigation. That, among other things, is a significant difference between the KB Holmes case that Health First is citing to you in this case. The party in KB Holmes that wanted the court to look at external evidence pointed the court to external evidence. They pointed the court to deposition testimony in that case that showed that despite the individual claimants and the nature of their claims, what the deposition testimony actually revealed was a system of harassment within the workplace that tied all those claims together. That evidentiary basis is non-existent here. Did Health First, though, request additional discovery? No, but to be clear, and this is a point that Mr. Craig made as well, it was not our burden to request additional discovery. We were the movement in a summary judgment motion. No, I'm saying did Health First request additional discovery? I apologize. No, it did not. It did not file a request for additional discovery, and there would have been none. There was no discovery available to us that wasn't available to Health First. Health First was the defendant below, and it had settled these cases even before it filed this one. So all of the facts that presumably it would have marshaled in support of its contention that despite the obvious relatedness of these complaints, the cases actually weren't related, were well within Health First's control. But, I mean, do you agree that under Florida law, if normally a claim for indemnification requires a court to look at the facts, not just the pleadings, right? I don't agree with that, Judge Gilman, because when it comes to this, first of all, when it comes to this type of indemnification, which is exactly the type in Acosta, defense costs plus a settlement, what the Acosta court says is, we recognize that a court may look at the facts outside of the complaint when it comes to indemnification. But what the Acosta court says is, the usual summary judgment standard still applies. If the party against whom that related case claim is being made puts forward the allegations of the complainant, says, look how similar these are. They are identical paragraphs across all these complaints. Health First itself, as you noted, contended that these complaints were identical. Then it is the obligation of Health First at that point on summary judgment to come forward and say, here is our disputed issue of material fact. And it proffered nothing there or in this court, importantly. But that brings me to the third point, which is the significant forfeiture issue that Health First has. The district court didn't just look solely to the allegations of the complaint. That is a contention that Health First makes a dozen times throughout its brief and here today. The district court at page 27 looked at Health First's own statements. And Judge Martin, I think you mentioned some of them, the statements that were made in, among other things, the summary judgment motions that were filed in the cases below. And what the district court said as to those is that the conclusion that Wusthof III is related to I and II is supported not only by the court's review of the underlying complaints and independent analysis, but also by the position previously taken by Health First in litigation, which the court found particularly enlightening. If you look at pages 7 through 10 of our brief, you will find in detail all of the statements that Health First made describing the similarity of the cases. And you heard it again from Health First counsel today that the complaints were copy and paste jobs. So there was no suggestion by the district court that it was just relying on the complaints themselves. So in many ways, this question, even if it weren't already resolved by ACOSTA, which is controlling, the question is completely academic. That leads me to the fourth point, which is the provision itself. The cases on which Health First prefers to rely, so for example, Koplowitz, contain a far narrower coverage provision, related claims provision, than here. Koplowitz was distinguished by another case that we cite in our brief, executive risk, as containing a narrow provision. This provision is extremely broad. And Judge Martin, you pointed this out as well. It contains, among other things, all of the broad language that this court encounters in a number of different circumstances. Based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, the same or related facts, circumstances, situations, transactions, or events, or the same or related series of facts, circumstances, situations, transactions, or events. That is a broad related claims cause. And I want to be very clear, Mr. Craig conceded this as well, that is a coverage provision. It is not an exclusion. And because it is a coverage provision, the burden was on the insured, not the insurer, to establish coverage. The fact that we identified this as an affirmative defense is irrelevant, because the insured has to show in a claims made policy, that the claim that they are seeking coverage or identification for, was first made during the policy period that they say it was. And because this was a related claim, all the way back to Westhoff 1 and 2, it was not first made during the policies for which they subsequently sought coverage. So if you stack all of those things together, and you have the concessions of Health First itself, as to Westhoff 3 and 4, you have this broad coverage provision, you have the district court's detailed analysis, not just of the fact that these were antitrust cases, but of exactly the circumstances that gave rise to the similarities, that we go through in detail in our brief, as does the capital specialty brief as well. I would urge the court to look at the charts that are laid out in our brief, look at the discussion in the capital specialty brief of the number of paragraphs shared in common of all of these complaints. And when you stack those up against the broad related claims provision, I think you should easily conclude that the district court's thorough decision was completely correct. If there are no questions. Thank you. Thank you, Your Honor. Good morning. Good morning, Your Honors. John Constine, may it please the court, John Constine for Co-Appellees, who are referred to in the briefs as the allied world defendants. Our position is obviously quite similar, if not almost on all fours, with the position of the executive risk defendants. And we certainly join in all of their arguments and join in Ms. Stetson's presentation today. My friend, Mr. Craig, was not involved in the underlying case, or in the summary judgment stage of the case. He is new to the appeal. And so there are a couple of facts that I do think need to be brought to the court's attention in connection with the questions that the court asked during my friend's presentation. First of all, there was no affidavit submitted on behalf of Health First other than affidavits that simply said, here are the cases that were filed. There was no affidavit submitted that said, this is what the cases really were about. These are what the facts of the cases were. There was no affidavit and no evidence submitted in response to the summary judgment motion that addressed those issues on Health First's behalf. And that is a critically important point because Health First, unlike my colleagues and me, unlike the executive risk and allied world defendants, was in sole possession of every fact and every document in the underlying case. And so I believe a question was asked, did Health First file a Rule 56-F motion or ask for similar relief? Health First, when it comes to the facts of the case, didn't need any of that. It had every fact and every document it could possibly have presented. And there was a nine-month period between the filing of this motion for summary judgment and the court's ruling on it in which the parties completed discovery in the case. And at no time did Health First ever seek to supplement its response to add that information. Second, Judge Gilman asked, did Health First cite Hagan and some of the other cases that they cite in the appellate brief? The answer is no. Squarely, no. My friend refers to the reply brief.  I looked at it while during the presentation. There is no citation to Hagan in the reply brief. There was no citation to Hagan in the opening brief. And in any event, this argument certainly wasn't, it was made in the form of a paragraph. Now, I would say with regard to Hagan, that case and the general principles that it cites are not applicable here. And with respect, there seems to be a misunderstanding of the nature of the duty to defend and duty to indemnify distinction. The duty to defend analysis is based on the complaint. If the complaints reflect that there is no coverage, then there is no duty to defend or duty to indemnify. So actually, the duty to indemnify is determined by the complaints if the complaints indicate a lack of coverage. Now, when the complaints themselves are not clear, the courts have said that you can then consider indetermining the duty to indemnify, but not the duty to defend. Right. But insurance companies often, the duty to defend is broader. And an insurance company, if the complaint alleges things that, hey, may be covered, you've got a duty to defend. You could later decide there is no coverage because when you get into the facts, they don't match up with the complaint. And therefore, you can deny coverage, right, even though you've entered, you started the duty to defend. Judge Gilman, you've hit the nail right on the head. In a way, it doesn't make sense to complain that the court applied a duty to indemnify standard when you're the insured, because the duty to indemnify standard is something, the idea that you can bring in evidence outside of the complaint is something that courts created to help insurers. But if the complaints themselves show there's no coverage, as they do here, then the duty to indemnify is irrelevant because there is no duty, I mean, or the duty, the standard of bringing in because there is no duty to defend or indemnify. And that's why Acosta's absolutely correct. That's why the court's approach was correct. I'd like to end with one very brief point on a different issue, which is the question of whether these claims are covered. There was some discussion of Westhoff 3 and 4. I want to be clear because Omni is of some importance to us because it falls in our policy period. Omni and the three claims that preceded it, Omni, Hines, Westhoff 3, and Westhoff 4 are essentially identical in terms of the nature of the allegations. Your Honor, I see my time is up. May I finish my thought? You may. We, and proof of that is in, I believe, DI 45-1, which is a chart we prepared that showed the commonality of the allegations. If Westhoff 3 relates to Westhoff 1 and 2, as it clearly does, then it follows that Westhoff 4, Hines, and Omni must also because there is virtually no daylight or no relevant daylight between those four complaints. Thank you, Your Honor. Thank you. Your Honor, there's a misconception here, I believe, about what the nature of the summary judgment entered by the lower court was. It was a summary judgment based entirely on the pleadings in the underlying cases. The district court said that. There were some surpluses at the end of the opinion about some statements of counsel or in the briefs that related to Westhoff 3 alone. The court did not cite to any evidence other than the pleadings in the underlying cases with regard to the summary judgment entered on every other lawsuit, with regard to the claims relating to every other lawsuit. So if we are to give the lower court some benefit of the doubt and mine through that order and find something that relates to evidence that the court based its decision on, it would solely relate to Westhoff 3. There's no evidence cited relating to any other lawsuit filed against Health First. And to continue to beat this dead horse, but the court had no evidence available to cite to because you gave them nothing, right? And we objected to the court proceeding based solely on the allegations and the underlying complaints. In the paragraph that counsel concedes that was in our briefing, we said you can't do this solely on the pleadings. The law says you have to look at the underlying facts. So if the burden was on the movement, the insurers to provide evidence in support of summary judgment and all they provided were those complaints. And if my client, as it did below, said, I'm sorry, that's inadequate as a matter of law, we need to look at the underlying facts, then we preserved our record and preserved our objection to the court entering a summary judgment based solely on the unsworn pleadings in those cases. What the insurers are doing here is incredible. Where they want to deny coverage on a related claims provision, they say the claims aren't related. And there are reams of cases on this. But now when they want to deny coverage because the first policy is exhausted, now they're arguing they are related. And what they're doing is saying, heads we win, tails you lose. If we are pursuing a related claims provision, we're going to argue the duty to defend test controls when that denies coverage. But however, if the shoe were on the other foot and we were in a position where they were arguing that the claims were not related, they certainly would want the court to look at all the evidence regarding coverage. What counsel said was, if the duty to defend is not triggered, then there's no identification. There's no court holding that in this context where the insurer is arguing relatedness to avoid coverage. And that's exactly what they're doing here. They are arguing inappropriately that ACOSTA is some controlling authority that allows a court in this situation to find that the duty to indemnify is coextensive with the duty to defend. And the ACOSTA court was just flat wrong about that issue. What the ACOSTA court did was three things. First, it was looking at a prior litigation exclusion, not even a related claims provision. And I would argue the ACOSTA court ventured into territory it needn't go into. But it's not our province to overrule a Florida appellate court decision, which seems to be represent the law of Florida, is it? No, but you don't have to follow one that's incongruent with the Florida Supreme Court and decisions that have been issued by this court. The Florida Supreme Court and this court have routinely and consistently said the duty to indemnify is determined by the underlying facts, not the pleadings. And the ACOSTA court dealing with a claim for duty to indemnify treated it like a duty to defend. And the only logic the court could muster for doing that was the argument made by counsel. Well, if there's no duty to defend, there's no duty to indemnify. That was the simplicity of the logic. But the court didn't even need to reach that issue because it was a prior litigation exclusion. There was no question the court was free to look solely at the pleadings in that case because of the nature of the provision at issue. It needn't go into the — ACOSTA was in 2010. Is there any Florida case that's relied on ACOSTA since then? Not that I'm aware of. And not in this context. No court has said, based on ACOSTA, that you can conflate the tests for purposes of determining whether there's identification. No court has said that. And finally, ACOSTA is not instructed for this court because it does not follow Rule 56. It's applying the Florida Rule of Civil Procedure. Rule 56 does not allow a court to do as the ACOSTA court said a court should do, which is pick and choose how much evidence it wants to look at. The ACOSTA court said, first, we'll compare the complaints. Then if there's some kind of conflict between them, we'll see if we need any more extrinsic evidence. And what the court said, and this is in the holding, we'll do it on a case-by-case basis, determining how much additional evidence we might need to reach a determination. That flies in the face of Rule 56. This court cannot advocate the procedures outlined in ACOSTA for purposes of summary judgment on a related claims provision because this court requires the district court to look at all the evidence and find that there are no disputed material issues of fact. Again, on this waiver issue, there's no question Health First objected to the pleadings themselves being the basis of the summary judgment as a matter of law. Thank you. Thank you.